## THE SYLVAN GLEN.

(District Court, E. D. Pennsylvania. May 7, 1917.)

### No. 41.

MARITIME LIENS ☞21—REPAIRS—AUTHORITY OF PERSONS ORDERING REPAIRS.
  Under Act June 23, 1910, c. 373, § 3, 36 Stat. 605 (Comp. St. 1916, § 7785), providing, relative to liens for repairs, supplies, etc., that nothing therein shall confer a lien when the furnisher knew, or by reasonable diligence could have ascertained, that under a charter party, the party ordering the repairs or supplies was without authority to bind the vessel, a party furnishing repairs on a charterer's order was not entitled to a lien, where it knew of the charter, and by reasonable diligence could have learned of a provision under which the charterer had no authority to bind the vessel, though it acted in the good-faith belief that the vessel was liable.

  [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 26.]

In Admiralty. Libel by the John Baizley Iron Works against the steamship Sylvan Glen. On trial hearing on libel, answer, and proofs. Libel dismissed.

Howard M. Long, of Philadelphia, Pa., for libelant.

Edward J. Mingey and H. Alan Dawson, both of Philadelphia, Pa., for respondent.

DICKINSON, District Judge. The ruling of this case turns upon a very narrow point. The libel as filed is under the provisions of the act of June 23, 1910, and was filed for furnishing repairs to the respondent vessel. The owner of the vessel is the Gloucester Ferry Company. The work was not done upon the order of the owner, or of any person by it authorized, nor was it done upon the order of the master, or of any persons who, by the provisions of the second section of the act, are presumed to have authority to order repairs to the vessel. Before the repairs were ordered the Sylvan Glen had been chartered to the Washington Park Amusement Company, which had undertaken under the charter party to be at the expense of the repairs. The charterer had no authority to bind the vessel as between the owner and the charterer. Under the provisions of section 3 of the act, the libelant has no right of lien if, as the furnisher of the repairs, it "knew, or by the exercise of reasonable diligence could have ascertained," the foregoing stipulation of the charter party. There are

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

other questions of fact raised in the case, but the one fact indicated is decisive of the claim, and, if determined against libelant, eliminates the others as practical questions.

Upon this crucial point the facts are clear and undisputed that the respondent is within the protection of the third section of the act. There was quite a little testimony and evidence introduced as to the participation of Mr. Rudolph Baizley, the president of the libelant company, in the making of the charter party agreement. He occupied a dual official relation to the libelant and to the owner, in that he was president of the one and a member of the board of directors of the other. As a director of the owner company, there is ample basis for the finding that he knew, or at least "by the exercise of reasonable diligence could have ascertained," the terms of the charter party. His knowledge, however, would bind the libelant company only because of his relations to the libelant as its president, and therefore its agent, and the libelant might be said to be within the protection of the rule that a principal is affected by only such knowledge of the agent as may have been gained or acquired in the course of the agency.

It is unnecessary to specifically rule whether this doctrine applies or not, because, waiving the knowledge which Mr. Baizley had as a director of the owner company, it is clear that knowledge of the chartering of the vessel came to the officers of the libelant company in the course of the business which culminated in the furnishing of these repairs. Among others, the secretary and treasurer of the company, who was the executive official in charge of its contracts, was told by the charterer that the vessel had been chartered. This information was confirmed by the officers of the owner when application was made to them. Indeed, it is not going too far to find that the libelant knew of the charter party, and that under its terms the charterer was to be at the expense of the repairs.

Aside from this, the libelant, knowing of the fact that the vessel had been chartered, by the exercise of reasonable diligence could have learned the terms of the charter party, and could have learned that the charterer was without authority to pledge the vessel. There is, indeed, a frank admission of such knowledge. The fact of knowledge is disclosed by the attitude of the libelant toward the owner and toward the vessel. The libelant asked the owner to intercede for it to induce the charterer to pay for the repairs. This request, it is true, seems to have been coupled with an intimation of the supposed right of the libelant to assert a lien against the vessel for the repairs. The libelant would seem to have been misled into extending a credit to the charterer because of its mistaken belief that it had the right to look to the vessel for the payment of this bill. In this belief, it misjudged its rights, because under the third section of the act above referred to, no such right of lien could under the facts of this case be asserted. The good faith of the libelant in this belief does not change the law. In taking the position which it did take, the libelant simply made a mistake as to what its rights were.

There can be no recovery on the facts of this case, and the libel is accordingly dismissed, with costs to the owner claimant.